IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | | |
|---|---|---|
| Ropax 1 KS and Ropax 2 KS, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. |
| European Red Sea Africa Lines Ltd, d/b/a ERSAL, | * | |
| | * | |
| All Trans Shipping and Trading Co. Ltd. | * | |
| Cotrans GMBH, | * | **VERIFIED COMPLAINT** |
| Defendants, | | **INCLUDING REQUEST FOR** |
| and | * | **ISSUE OF WRIT FOR MARITIME GARNISHMENT AND ATTACHMENT** |
| Wilhelmsen Ship Service, Inc., | * | |
| ARZ Export, LLC, | * | |
| ETA Exports LLC, | * | |
| The Master of the M/V OCEAN LADY 1, | * | |
| Garnishees. | * | |

* * * * * * * * * * * *

Plaintiffs ROPAX I KS and ROPAX 2 KS (collectively "Plaintiffs") sue EUROPEAN RED SEA AFRICA LINES LTD. d/b/a ERSAL ("ERSAL"), ALL TRANS SHIPPING AND TRADING CO. LTD. (All Trans") and COTRANS GMBH ("Cotrans") (collectively "Defendants") as follows:

1.  This is a case of admiralty and maritime jurisdiction and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The

Court has subject matter jurisdiction. This Court has jurisdiction pursuant to 28 U.S.C. § 1333 and 9 U.S.C. § 8.

2. Plaintiffs were and now are foreign companies incorporated under the laws of Norway and the owners of the Motor Vessels "Ropax I" and "Ropax 2," respectively.

3. Defendants ERSAL and All Trans were and now are corporations organized and existing under the laws of Jordan and Cotrans was and now is organized and existing under the laws of Germany.

**Facts**

4. Ropax I KS chartered its Vessel "ROPAX I" to ERSAL as "part of the Alltrans Group with Alltrans Shipping & Trading Co. Ltd. ("Alltrans")] guaranteeing the obligations and performance of the Charterers . . . and any arbitration award resulting therefrom," by charter party dated July 11, 2008 (the "Ropax I Charter").

5. Ropax 2 KS chartered its Vessel "ROPAX 2" on the same terms to Defendants by charter party dated June 3, 2008. Aff. Ex. 2 (the "Ropax 2 Charter," collectively, with the Ropax I Charter, the "Charters").

6. The Vessel ROPAX I was delivered to Defendants under the Ropax I Charter on or about November 3, 2008. Defendants have sought to repudiate the Ropax I Charter in failing to pay hire under the charter.

7. Ropax 1, as best as may be presently determined, calculates its damages for Defendants' wrongful repudiation and breach of the Ropax I Charter to be the equivalent of $4,089,617.

8. The Vessel ROPAX 2 was delivered to Defendants under the Ropax 2 Charter on

or about August 11, 2008. Defendants employed the Vessel, and paid charter hire, until on or about December 9, 2008 when they returned or redelivered the vessel prematurely and in breach of the Ropax 2 Charter.

9. Ropax 2, as best as may be presently determined, calculates its damages for Defendants' breach of the Ropax 2 Charter to be the equivalent of $2,163,075 in respect of which security has been provided in the equivalent of $369,075 for a net claim of $2,394,000.

10. The Charters are subject to English law and London arbitration. Plaintiffs nominated an arbitrator and have commenced arbitration under the respective Charters by letters dated November 20, 2008 and December 10, 2008. This action is expressly filed without prejudice to that right of arbitration.

11. COTRANS acted as "paying agent" for ERSAL and All Trans.

12. In respect of the MIV ROPAX 2 Plaintiffs received a wire confirmation from Commerzbank, a German based bank, of hire payment for the first period of hire under the Ropax 2 Charter. The "confirmation" shows that the party making the payment was "Cotrans GmbH" and further records: "First 15 days hire by order of All Trans Amman."

13. It is not common practice in the maritime industry, or any other industry, for one company to pay the invoices of another when it has no independent liability to do so and is wholly unrelated to the underlying contract, as is the case with COTRANS and the Charters.

14. Accordingly, in respect of the Charters, COTRANS acted as paying agent for ERSAL and/or ALL TRANS and arranges to satisfy the debts and obligations of

ERSAL and/or ALL TRANS.

15. On information and belief COTRANS is now being used by Defendants ERSAL and/or ALL TRANS to hold or transfer monies.

16. ERSAL, ALL TRANS and COTRANS are owned, controlled and dominated by the Abu Rashed family including Mr. Asad Abu Rashed and Mr. Mohammed Abu Rashed.

19. Upon information and belief, ERSAL is merely a shell-corporation through which the ABU RASHED GROUP and/or ALL TRANS conducts its business.

20. Upon information and belief, COTRANS is the alter ego of ERSAL. ALL TRANS because ERSAL and ALL TRANS dominate and disregards COTRANS's corporate form to the extent that it is actually carrying on ERSAL/ALL TRANS's business and operations as if the same were its own.

21. In the alternative, COTRANS is the partner and/or are joint venturer of ERSAL and/or ALL TRANS.

22. In the further alternative, COTRANS is an affiliated company with ERSAL and ALLTRANS such that COTRANS is now, or will soon be, holding assets belonging to ERSAL/ALL TRANS and vice versa.

## COUNT I
## BREACH OF MARITIME CONTRACT

23. Plaintiffs repeat the foregoing paragraphs.

24. Defendants have breached their maritime contract with plaintiffs. Plaintiffs have suffered damages and are entitled to contractual recovery as follows, in arbitration or otherwise:

    A. On the principal claims, $6,483,617;

    B. Estimated Recoverable English Lawyers' and Arbitrators' Fees and Costs,

    $525,000;

C. Interest over the course of 3 years at prime $1,556,068, rate average of 8% per annum;

**TOTAL:** **$8,564,685.**

## COUNT II
## RULE B RELIEF

25. Plaintiffs repeat the foregoing paragraphs.

26. Plaintiffs seek issue of process of maritime attachment so that they may obtain security for their claims including its English attorneys' fees and arbitrators' fees which are routinely awarded in London arbitration.

27. Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but are believed to have, or will have during the pendency of this action, assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of garnishees in this District, including but not limited to accounts payable and bunkers.

  WHEREFORE, Plaintiffs pray:

A. That this Court compel defendants to proceed to arbitration, or that alternatively this Court award plaintiffs judgment in the amount of at least $8,564,685, plus interest and costs;

B. That process in due form of law issue against Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

C. That since Defendants cannot be found within this District pursuant to Rule B,

      this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee, which are due and owing to Defendants up to the amount of $8.564,685 to secure the Plaintiffs' claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

D.     That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

E.     That Plaintiffs may have such other, further and different relief as may be just and proper.

Dated: February 10, 2009.

                                        /s/ J. Stephen Simms
                                        J. Stephen Simms (#4269)
                                        John T. Ward
                                        M. Scotland Morris
                                        Simms Showers LLP
                                        Suite 702
                                        20 South Charles Street
                                        Baltimore, Maryland 21201
                                        Telephone: 410-783-5795
                                        Facsimile: 410-510-1789

                                        Ropax 1, Ropax 2 Counsel

## **VERIFICATION**

I am a Principal of the law firm of Simms Showers LLP, counsel to plaintiffs. I verify under solemn affirmation that the facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of plaintiffs made available to me by plaintiffs.

I further verify that defendants cannot be found within this District within the meaning of Supplemental Rule B. There is no corporate officer of plaintiffs readily available in the District to make this verification. I am authorized by plaintiffs to make this affidavit. I state that on behalf of plaintiffs, an electronic records search for defendant was completed in the records of the Maryland State Department of Assessments and Taxation, finding no resident agent or corporate registration for defendant in Maryland, and that according to Directory Assistance there is no telephone listing for defendant within any area code in this District.

Pursuant to 28 U.S.C. § 1746, I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on February 10, 2009.

/s/ J. Stephen Simms
J. Stephen Simms (#4269)
Simms Showers LLP
Suite 702
Twenty South Charles Street
Baltimore, Maryland 21201
Telephone: 410-783-5795
Facsimile: 410-510-1789

Plaintiffs' Counsel